**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DWAYNE SIMMS** | **CIVIL ACTION** |
| **versus** | **NO. 07-966** |
| **N. BURL CAIN, WARDEN,** | **SECTION: "I" (1)** |
| **LOUISIANA STATE PENITENTIARY** | |

<u>**REPORT AND RECOMMENDATION**</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **GRANTED IN PART AND DENIED IN PART**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Dwayne Simms, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On December 19, 2002, he was found guilty of four counts of armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[2]  On January 10, 2003, he was sentenced on each count to a term of ninety-nine years imprisonment without benefit of probation, parole, or suspension of sentence, and it was ordered that the sentences run concurrently.[3]  On April 1, 2003, he was found to be a second offender and was resentenced as such on Count One of the bill of information to a concurrent term of one hundred ten years imprisonment.[4]  On July 27, 2004, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[5]  The Louisiana Supreme Court then denied petitioner's related writ application on May 20, 2005.[6]

On or about February 8, 2006, petitioner filed with the state district court an application for post-conviction relief.[7]  That application was denied on February 16, 2006.[8]  His

---

[2] State Rec., Vol. II of VI, transcript of December 19, 2002, p. 211; State Rec., Vol. I of VI, minute entry dated December 19, 2002; State Rec., Vol. I of VI, jury verdict form.

[3] State Rec., Vol. II of VI, transcript of January 10, 2003, p. 6; State Rec., Vol. I of VI, minute entry dated January 10, 2003.

[4] State Rec., Vol. II of VI, transcript of April 1, 2003; State Rec., Vol. I of VI, minute entry dated April 1, 2003.

[5] State v. Falkins, 880 So.2d 903 (La. App. 5th Cir. 2004) (No. 04-KA-250); State Rec., Vol. II of VI.

[6] State ex rel. Simms v. State, 902 So. 2d 1045 (La. 2005) (No. 2004-KH-2171); State Rec., Vol. IV of VI.

[7] State Rec., Vol. V of VI.

[8] State Rec., Vol. V of VI, Order dated February 16, 2006.

related writ applications were denied by the Louisiana Fifth Circuit Court of Appeal on March 17, 2006,[9] and the Louisiana Supreme Court on January 12, 2007.[10]

On January 19, 2007, petitioner filed the instant federal application for *habeas corpus* relief.[11]  In support of his application, he claims:

1. There was insufficient evidence to support petitioner's convictions;

2. The trial court erred in denying the defense motion for a mistrial;

3. Petitioner's sentences were illegal and excessive;

4. Petitioner received ineffective assistance of counsel both at trial and on appeal;

5. Petitioner was denied his right to a speedy trial;

6. Petitioner was denied a fair trial due to the failure to sequester the witnesses;

7. Petitioner was denied a fair trial due to the admission of evidence that his co-defendant had been convicted in separate proceedings;

---

[9] Simms v. Cain, No. 06-KH-172 (La. App. 5th Cir. Mar. 17, 2006) (unpublished); State Rec., Vol. VI of VI.

[10] State *ex rel.* Simms v. State, 948 So.2d 143 (La. 2007) (No. 2006-KH-1321); State Rec., Vol. VI of VI.

[11] Rec. Doc. 1.

8.      The trial court erred in failing to properly instruct the jury and

in failing to give a cautionary instruction; and

9.      Petitioner was wrongly found to be a habitual offender.[12]

The state concedes that the petitioner exhausted his state court remedies and that the instant application is timely filed.[13]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

---

[12]  In his federal application, petitioner lists sixteen claims.  The Court has combined and condensed the repetitive and overlapping claims for ease of analysis; however, all claims are addressed in this Report and Recommendation.

[13]  Rec. Doc. 10, p. 3.

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning.  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts.  The court may grant relief under the
> "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case.  The focus
> of the latter inquiry is on whether the state court's application of
> clearly established federal law is objectively unreasonable, and we
> stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> At trial, the State introduced evidence to show that, on
> October 19, 2000, at approximately 9:15 a.m., defendant, Floyd
> Falkins, along with Larry Simms, walked into the Hibernia National
> Bank (Hibernia) at 4601 Westbank Expressway in Marrero and
> robbed four tellers while armed with guns.  The State also introduced
> evidence to show that, after the robbery, Falkins and Simms got into
> a vehicle being driven by defendant, Dwayne Simms, and they fled
> the scene.
> Kenyatta Bush, a teller at Hibernia, testified that she worked
> at station number four behind the teller counter in the bank.  As she
> was processing ATM deposits, she suddenly heard a loud noise at the
> front door.  Two men entered the bank and said, "Okay, everybody

get down on the f'ing floor."  Ms. Bush complied, lying down on the floor in the walkway between stations numbers two and three.  She subsequently heard another loud noise and saw one of the men jump over the counter and through her window.  He went directly to station number two and got some money from that teller.  He then went to station number one.

When Ms. Bush saw the man at station number one, she scooted back and pressed the holdup button.  At that time, Ms. Bush was in station number three with another teller, Betty Higgins.  The man subsequently came to station number three and demanded money from Ms. Higgins.  After he got all of Ms. Higgins' money, the man in the lobby said, "Come on, let's ride," and the man behind the counter jumped back over the counter and left.  Ms. Bush testified that, during the robbery, she saw guns.  She explained that the man who jumped over the counter wore a dark sweat shirt, either black or dark gray, and that she could not see his face because it was covered.

Mary Domingue and Betty Higgins, who were bank tellers, Virginia Keller, who was a customer service representative, and Dianne Fennidy, who was a branch manager, also testified at trial, and their testimony largely corroborated that of Ms. Bush.  Additionally, Ms. Higgins testified that the money the robber took from her included a "dye pack."  She further testified that the robber who did not jump over the counter wore a bandanna and a light gray sweat shirt, which she identified in court.

Witness Sylvia Bourg testified that she waited in her car while her daughter went into Hibernia to cash a check.  Ms. Bourg subsequently got out of the car because her daughter was gone for so long.  When Ms. Bourg walked up to the bank, she realized something was wrong.  She observed two black males "coming up" wearing sweat shirts and hats, even though it was a warm day.  She testified that one of the men wore a gray sweat shirt with a hood, and the other man wore something black with a hat over his head.

Ms. Bourg observed them walking fast, and one of the men had a bag in his hand with red smoke coming out of it.  She explained that the two men started to run after the red smoke came out of the bag.  Ms. Bourg was unable to get a good look at their faces, but she saw them go toward Rite Aid and down toward the other end of the strip shopping center.

Witness Jean D. Pierre testified that she was in the Rite Aid parking lot with her son and daughter when she observed two men coming from Hibernia toward the Rite Aid parking lot.  Ms. Pierre

turned to her daughter and said that it looked like those men had robbed the bank, so she continued watching them.

Ms. Pierre explained that one of the men dropped something with red and white smoke coming from it on the neutral ground and then right in front of Rite Aid. After the men passed Rite Aid, they picked up their pace. She saw the men go to the parking lot behind Rite Aid, get into a burgundy Maxima, and flee. When the two men got in the vehicle, there was someone sitting in the driver's seat and the car was stopped at an angle, waiting and ready to go with the back doors open. Ms. Pierre explained that the driver of the burgundy car turned onto Avenue D and then made a left turn onto the expressway.

Ms. Pierre told her daughter to write down the license plate number, JCP 866, [FN3] which her daughter wrote down on the back of a napkin. Ms. Pierre identified a photograph of the car in court. She could not see the faces of the two men who came from the bank; however, she testified that one of the men was wearing a black sweat jacket and the other man was wearing a light gray sweat jacket with a hood. She stated that one of the men was wearing something over his face, but the other man was not.

[FN3]  The correct license plate number was actually "JGP 866."

Jefferson Parish Sheriff's Office (JPSO) Sergeant Chad Gauthreaux testified that he responded to a bank robbery call at Hibernia. He obtained a description of the two men from branch manager Dianne Fennidy and broadcast that description over the radio: suspect number one was a black male, 5'10", thin build, late teens or early 20's, wearing a gray hooded sweat shirt with the hood pulled over his head; and suspect number two was a black male, tall, thin build, late teens or early 20's, with a black cloth or rag covering the top of his head.

JPSO Deputy George Giron testified that he received information over the radio that two men had robbed the Hibernia bank, fled in a red Maxima with license plate number JGP 846, and were traveling eastbound on the elevated portion of the expressway. Deputy Giron and his partner went to Stumpf Boulevard, stopped at the high rise, and waited to see if that car passed. Deputy Giron subsequently noticed a red Maxima occupied by three black males with a similar license plate number. He testified that the license plate number was not an exact match, but it was close.

- 7 -

Deputy Giron and his partner pulled the vehicle over and ordered the driver out of the vehicle.  The driver exited the vehicle and then returned into the vehicle.  They again ordered the driver out of the vehicle.  After he got out, they ordered him to the rear of the vehicle.  Instead, the driver walked to the front of the vehicle.  Assuming that the driver could not hear him because of the traffic, Deputy Giron went to get his public address system out of his car.  At that point, the driver jumped over the side of the elevated expressway, which he estimated was 25 to 30 feet above the ground.

Deputy Giron went around to the front of the Maxima and observed two men still in the vehicle, a front passenger and a rear right passenger.  He ordered the two men out of the vehicle, placed them on the ground, secured them with handcuffs, and placed them in separate vehicles.  The officers conducted a visual cursory search of the vehicle and saw a handgun protruding from underneath the front passenger seat, gloves, sunglasses, and bandannas.  The officers also saw a black bag and a dark gray sweat shirt in the back seat.

Deputy Giron testified that Dwayne Simms was later identified as the driver, Larry Simms as the front seat passenger, and Floyd Falkins as the back seat passenger.  He subsequently learned that the three men were brothers.  Deputy Giron identified a photograph of the vehicle and stated that the license plate on the vehicle was JGP866.  He ran the license plate which showed that it was registered to Dwayne Simms.

JPSO Detective John Carroll testified that the following items were recovered from the burgundy Maxima:  a .22 caliber black semiautomatic handgun located on the floorboard of the front passenger seat; a 15 round .22 caliber magazine; twelve .22 caliber live rounds; a black .357 Magnum revolver located on the rear passenger floorboard; three Winchester .38 special rounds; three .357 hollow point rounds; sunglasses; one pair of brown cloth gloves; one pair of greenish brown cloth gloves; a black knit ski mask; a red bandanna; a black nylon bag with red dye on the inside; $15,839 in U.S. currency; [FN4] three security dye packs; and one dark blue Adidas brand hooded sweat shirt located on the driver's floorboard.

> [FN4] Det. Carroll identified a photograph of the currency removed from the vehicle.  The photograph shows that the currency was covered with red dye.

Penny Falkins, who was called as a witness by the defense, testified that Floyd Falkins was her husband, and that in October of

2000, he was under the care of doctors because he had been in an automobile accident. Mrs. Falkins explained that her husband had hurt his back and knee, that she brought him to see the doctor twice a week, that he was on medication, and that he was fifty-one years old.[14]

### Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his convictions. Specifically, he contends that there was insufficient evidence to support his conviction as to the armed robberies of Lorna Moore and Kenyatta Bush. He additionally contends that there was insufficient evidence to convict him as a principal with respect to any of the convictions.

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). "The Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational decision* to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).

---

[14]   State v. Falkins, 880 So.2d 903, 907-09 (La. App. 5th Cir. 2004) (No. 04-KA-250); State Rec., Vol. II of VI.

A sufficiency of the evidence argument presents a mixed question of law and fact. Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court decision rejecting such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

With respect to his claim that there was insufficient evidence to support his conviction for the armed robbery of Lorna Moore, petitioner premised that claim on the fact that Moore did not testify at trial. On direct appeal, the Louisiana Fifth Circuit Court of Appeal held that the evidence was nevertheless sufficient based on the other testimony:

> In their first assignment of error, both defendants argue that the evidence was legally insufficient to support the verdict on count one, the armed robbery of Lorna Moore. They contend that there was no evidence to prove that Ms. Moore was the victim of an armed robbery, because Ms. Moore did not testify at trial and her name was not mentioned by the other witnesses. The State responds that the evidence was sufficient to support the conviction on count one. It argues that, although Ms. Moore did not testify, three of the other tellers did testify as eyewitnesses to the offense against Ms. Moore.
>
> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 82. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984). This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of

reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La. 1/14/00), 753 So.2d 208. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La. 1982).

LSA-R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

In the instant case, Mary Domingue testified that Lorna Moore was a teller on the day of the robbery, and that Ms. Moore's station was right next to hers. She identified Ms. Moore's station as station number two. Ms. Domingue heard one of the robbers order her and the other tellers to unlock their drawers and surrender their money. Betty Higgins testified that one of the men robbed window number two. Kenyatta Bush testified that, when the robber told them to get on the ground, she landed between windows two and three. She explained that, as soon as the robber came behind the teller counter, he went directly to window two and "got some money from her...." Each teller testified that the robbers had guns.

In State v. Banks, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 410-411, cited by both the State and the defendants, Dwight Dedeaux, the alleged armed robbery victim, did not testify at defendant's trial. However, the other victim testified that defendant and his companions took something of value, a jacket, from Mr. Dedeaux, by use of force or intimidation, while armed with a gun. Another eyewitness to the robberies testified that defendant and the other perpetrators took property from Mr. Dedeaux. Sergeant Thornton identified a photograph of the back seat of a jeep depicting a gray coat lying on the rear seat. He testified that the coat belonged to Mr. Dedeaux, and another witness identified the coat in the photograph as the one taken from Mr. Dedeaux. This Court concluded that the testimony of the witnesses was sufficient to establish that defendant committed the armed robbery of Mr. Dedeaux.

In the present matter, although Ms. Moore did not testify, the testimony of Ms. Domingue, Ms. Higgins, and Ms. Bush, revealed that one of the robbers took money from Ms. Moore, as well as the

- 11 -

other tellers.  Accordingly, we find that the State presented sufficient evidence to establish that defendants committed armed robbery of Lorna Moore, and this assignment of error is without merit.[15]

The transcript supports the state court's conclusion.  Mary Domingue testified that, on the day of the robbery, Lorna Moore was working at teller station number two.[16]  Both Betty Higgins and Kenyatta Bush testified that the robber robbed station number two.[17]  Domingue, Higgins, and Bush all testified that the robbers had guns.[18]  Accordingly, the evidence was clearly sufficient to support petitioner's conviction for the armed robbery of Lorna Moore.

The Louisiana Fifth Circuit Court of Appeal likewise rejected on direct appeal petitioner's claim that there was insufficient evidence to convict him as a principal with respect to the crimes:

> Defendant Simms filed a *pro se* brief on his own behalf, in addition to the brief filed by counsel on behalf of both defendants. In his *pro se* brief, defendant Simms argues that ... the evidence presented by the State was insufficient to support his conviction as a principal to armed robbery.  He contends that there was no evidence to suggest that he had any knowledge that the two perpetrators were going to commit an armed robbery or that they had committed an armed robbery.  He further contends that there was no direct testimony, the circumstantial evidence was weak and contained inconsistencies, his mere presence was insufficient to support the verdict, and that at most he could only be found guilty of accessory after the fact.

---

[15]  State v. Falkins, 880 So.2d at 909-10; State Rec., Vol. II of VI.

[16]  State Rec., Vol. II of VI, transcript of December 19, 2002, p. 48.

[17]  State Rec., Vol. II of VI, transcript of December 19, 2002, pp. 57 and 73.

[18]  State Rec., Vol. II of VI, transcript of December 19, 2002, pp. 48, 59, and 74.

A principal is any person concerned in the commission of a crime, whether present or absent, and whether he directly commits the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime. LSA-R.S. 14:24. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La. 1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).

Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La. 2/3/94), 631 So.2d 427, 428. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Pierre, supra. Though intent is a question of fact, it may be inferred from the circumstances. State v. Kahey, 436 So.2d 475, 488 (La. 1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591, 593 (La.1982).

In several cases, this Court has found that the evidence was sufficient to establish that defendant was a principal to armed robbery when he acted as the driver of the getaway vehicle. In State v. Saylor, 01-451 (La.App. 5 Cir. 11/27/01), 802 So.2d 937, writ denied, 01-3406 (La. 10/4/02), 826 So.2d 1122, juvenile J.B. was walking near his home when a black Dodge Neon occupied by two black males pulled up alongside him. The passenger in the Dodge jumped out of the vehicle with a gun, placed it at the victim's head, and demanded money. J.B. only had a key ring, which he gave to the robber. The vehicle drove away, and J.B. was able to see the license plate.

Defendant, the driver of the vehicle, was convicted of armed robbery. The victim testified that defendant transported the gunman to and from the scene, that defendant appeared to keep watch during the commission of the crime, and that defendant took no actions to prevent the crime. This Court stated that the factfinders could have reasonably inferred that defendant had the requisite intent to commit the crime in that he aided its commission by acting as the lookout and driver of the getaway car. This Court concluded that a rational trier of fact could have found that the State proved beyond a reasonable doubt that defendant was a principal to armed robbery.

In State v. Jackson, 99-1256 (La.App. 5 Cir. 7/25/00), 767 So.2d 848, two co-defendants entered an apartment wearing disguises, pointed handguns at twelve to fourteen women who were

playing cards, and demanded money.  The two men took money and jewelry and left. Defendant, the driver of the vehicle, the two co-defendants and a fourth man split the stolen cash.  After dropping off one of the co-defendants, the remaining three men were involved in a high-speed chase with the sheriff's office.  The three men abandoned the car and fled on foot.  Defendant was later arrested. The two co-defendants turned themselves in and gave recorded statements indicating that defendant was not only involved in the robbery, but that he planned it and gave them weapons.

Defendant was convicted of eight counts of armed robbery. This Court concluded that the evidence was sufficient to support defendant's convictions for seven counts of armed robbery, noting that defendant was the driver of the getaway car and was involved in the crime.  It stated that, although defendant did not actually participate in the armed robbery, he was a principal to the action.

In the present case, during the robbery, defendant waited for Simms and Falkins in his vehicle which he parked away from the bank in a parking lot near Rite Aid.  The record further indicates that the vehicle was sitting at an angle "waiting and ready to go" with the back doors open.

Following the robbery, two men were seen walking fast toward Rite Aid, one of whom had a bag in his hand with red smoke coming out of it.  The two men, one of whom was wearing a mask or hood, subsequently entered the parked vehicle, and defendant immediately drove away from the scene.  After the police pulled the vehicle over, defendant got out and attempted to escape by jumping over the side of the expressway.  Numerous items of physical evidence found in the vehicle linked defendant to the armed robbery, including, but not limited to, a black bag with red dye on the inside containing the money stolen from the bank, two guns fitting the victims' descriptions along with ammunition, a black knit ski mask, and a hooded sweat shirt.

The defendant argues that there was no evidence to suggest that he knew the perpetrators were going to commit an armed robbery or that they had committed an armed robbery.  However, the record shows that the factfinders could have reasonably believed that defendant knew Simms and Falkins were going into the bank to rob it.  Simms did not park in front of the bank, but rather away from the bank with the back doors open, and he drove away immediately after the two men got into the vehicle.  A gun was found in the front of the vehicle indicating that defendant was a conscious participant whose role in the crime was to drive the getaway car.  Additionally, the

- 14 -

> record indicates that Simms and Falkins were not strangers to defendant, but were in fact, his brothers.  Based on the foregoing, the factfinders could have reasonably inferred that defendant had the requisite intent to commit the crime in that he aided its commission by acting as the driver of the getaway car.  Accordingly, we find that the evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty as a principal to armed robbery, and the first error asserted by defendant Simms in his *pro se* brief is without merit.[19]

For the reasons noted by the state court, any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that petitioner was guilty as a principal with respect to the instant crimes.

For all of the foregoing reasons, petitioner has failed to demonstrate that the state court's decision rejecting these first two claims regarding the sufficiency of the evidence was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects the claims.

In the state post-conviction proceedings, petitioner raised a third claim challenging the sufficiency of evidence, i.e. that there was insufficient evidence to support his conviction as to the armed robbery of Kenyatta Bush as charged in Count Two of the bill of information.  The state district court rejected that claim as repetitive and barred by *res judicata,* holding the claim had been asserted and denied on direct appeal.[20]  However, as the state notes in its supplemental response in this proceeding, that ruling was clearly erroneous, in that this particular claim challenging the

---

[19]  State v. Falkins, 880 So.2d at 913-14; State Rec., Vol. II of VI.

[20]  State Rec., Vol. VI of VI, Order dated February 16, 2006, p. 3.

sufficiency of the evidence was raised for the first time in the state post-conviction proceedings.[21]

Further, for the following reasons, the Court finds that the claim has merit.

At the time of the robbery, four teller windows were open.  Kenyatta Bush was the

teller working at window number four.[22]  In her testimony at trial, Bush described the robbery as

follows:

> On the morning of October 19th, I was in my window processing
> ATM deposits.  I had my head down when suddenly I heard a loud
> outburst come through the door:  Okay, everybody get down on the
> f'ing floor.  So, I raised up.  So, it's like at the time I started to panic.
> And I landed – when he say get on the ground, I landed like right
> between window two and three.  So, I was on the ground right there,
> still like in the walkway.  So, I heard like a loud noise (indicating),
> a slap on the counter.  So, when I turned around, he was jumping
> through my window, which was window four.  So, that's when he
> came behind the teller line.  As soon as he came behind the teller line,
> he went directly to window two.  That was the backup central teller's
> window.  So, he got some money from her, then he went to window
> one.  That was where the main central teller window was.  Then he
> came to window three.  At that time when I saw him in window one,
> I like scooted back and pressed our holdup button.  And I was in the
> window with Ms. Betty Higgins, which was window three.  I wasn't
> in my window anymore.  So, that's when he came to window three
> and demanded money from Betty Higgins.  So he got all the money
> out Betty Higgins' drawer.  And then the one who was in the lobby,
> I heard him say:  Come on, let's ride.  And once he said that – He was
> on his way to my window, which he probably didn't know that I was
> in my window.  Because when I heard him come in, it's like I ran.
> So, he went to turn the knob on the door – We have a door like on the
> end of the teller windows, which that would be on the side of window
> seven.  So, we have a door.  So, he couldn't get out the door.  So, he

---

[21]  Rec. Doc. 14, p. 2 & n.2.

[22]  State Rec., Vol. II of IV, transcript of December 19, 2002, pp. 68 and 72.

jumped the counter over window seven to get out.  And that's what happened.[23]

Betty Higgins likewise testified that money was taken only from windows one, two, and three.[24]

For petitioner validly to be found guilty of the armed robbery of Kenyatta Bush, the prosecution had to present sufficient evidence to prove, *inter alia*, that something of value was taken from Bush's person or from her immediate control.  La.R.S. § 14:64(A).  There was no evidence whatsoever that robber took any money from Bush's teller window, i.e. window four.  Further, there was no evidence that the robber forced Bush to give him money from any other area in the bank within her immediate control.[25]  Accordingly, there was insufficient evidence to support petitioner's conviction for the armed robbery of Kenyatta Bush.  See State v. Valrie, 749 So.2d 11 (La. App. 3rd Cir. 1999) (despite robbery of another teller at the bank, evidence was insufficient to support conviction for the armed robbery of a teller who was merely ordered to get on the floor but from whom no money was taken).  Petitioner should therefore be granted federal *habeas corpus* relief

---

[23] State Rec., Vol. II of IV, transcript of December 19, 2002, pp. 72-74.

[24] State Rec., Vol. II of IV, transcript of December 19, 2002, pp. 56-58.

[25] In its supplemental response in this proceeding, the state argues that the conviction should stand because, although no money was taken from window four, Bush was hiding between windows two and three at the time money was taken from those windows.  However, there is no evidence that the money at those windows was under Bush's control or that the money from those windows was demanded from or taken from Bush.  Further, because petitioner was *separately convicted* of the armed robbery of Lorna Moore for the money taken from window one and of the armed robbery of Betty Higgins for the money taken from window three, any additional conviction and punishment for taking that same property would appear to run afoul of the protections against double jeopardy.

with respect to that conviction.[26]   Further, because relief should be granted due to insufficient

evidence, he may not be retried on that charge.   Turner v. McKaskle, 721 F.2d 999, 1004 (5th Cir.

1983).[27]

Denial of Mistrial/Overruling of Objection

Petitioner claims that the trial court erred in denying the defense motion for a mistrial

and in overruling defense counsel's objection when the prosecutor made allegedly improper

remarks.  On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> In the second and final argument raised by defendant Simms in his *pro se* brief, he argues that the trial court erred by denying his motion for a mistrial and in overruling the objection made by defense counsel during closing argument.   He contends that the prosecutor's closing argument was improper, prejudicial, and in violation of LSA-C.Cr.P. art. 774, because the prosecutor implied that the defense had a duty to adduce testimony from a witness at the doctor's office, and because the prosecutor implied that he had excluded any hypothesis of innocence as to why defendant attempted to flee from the arresting officer.
>
> The first exchange at issue occurred during the state's rebuttal argument as follows:
>
> MR. PACIERA [The prosecutor]:
> And, no matter how hard Mr. Regan tried to get her to say it, that car wasn't parked in front of a doctor's

---

[26]  In its supplemental response in this proceeding, the state argues that, even if the evidence is insufficient to support petitioner's conviction for the armed robbery of Kenyatta Bush, the evidence was sufficient to support a conviction for the *attempted* armed robbery of her.   Even if that is accurate, *which is an issue this Court does not reach*, it is of no moment.   When federal *habeas corpus* relief is warranted based on the fact that there was insufficient evidence to support petitioner's actual conviction, this Court has no authority deny relief simply because there are other crimes of which petitioner could have been, *but was not,* convicted.

[27]  In that this conviction must be vacated based on insufficient evidence, the Court need not consider petitioner's remaining claims as they relate to the conviction.

office, it was parked on a sidewalk in a totally illogical place where it would have been in the way. And, if it had been there for him to go in the doctor's office, why didn't you hear somebody from the doctor's office come here and say, oh, yeah, Mr. Simms had a doctor's visit that day?

MR. REGAN [Defense counsel]:

Judge, there's an objection at this point. May we approach the Bench?

MR. PACIERA:

I will say that they don't have that duty.

THE COURT:

Let him state – Come to the Bench and let him state his objection.

(THE FOLLOWING IS A CONFERENCE AT THE BENCH.)

MR. REGAN:

The objection is that counsel cannot suggest the defendant should call witnesses at this point. I did not put on a case, there were no witnesses to put on, and for counsel to suggest I should have called the doctor or anybody else is improper. I object, and I move for a mistrial.

MR. PACIERA:

And I will tell the jury at this point that they don't have a duty to put on any evidence, any witnesses, and they can't hold it against them, but they're asked to use their common sense.

MR. REGAN:

The damage is already done, Your Honor.

THE COURT:

I'm going to deny the motion for a mistrial. But I'm going to ask Mr. Paciera to make that statement.

- 19 -

MR. PACIERA:

 Yes, Your Honor.

MR. REGAN:

 Your Honor, I would ask, and the trilogy requires me to ask, that the Judge instruct the jury that they're to disregard that argument and advise.  Not Mr. Paciera but the Court should advise them now that that's improper, and there's no burden on the defendant to call witnesses.

MR. PACIERA:

 And my close was interrupted, and I would like to be able to do it for my own continuity.

THE COURT:

 Step back.

 (END OF BENCH CONFERENCE)

THE COURT:

 I'm going to deny the motion request, but I'm going to sustain the objection to the statements.  And I just want the jury to be aware of one thing before Mr. Paciera continues with his closing argument, that under the law as I instruct you – and I will do it again in a minute – the defendants are not required by law to call any witnesses or produce any evidence.  Okay?

 Let's continue.

The second exchange at issue also occurred during the state's rebuttal argument:

MR. PACIERA:

 And what did Dwayne Simms do when he got caught?  First off, he refused to cooperate when the officer told him to get out of the car and come to the police car.  He got back in his car, then got out, and, instead of coming back to the police car when he was ordered to do so, he walked to the front of the car and

then jumped over.  Is that the action of an innocent person?  Obviously not.

  There is a photograph here – Oh, because one of the things that Mr. Regan said was something about a gun being pointed at his client.  Well, I'm not sure what trial he was in, but the trial that took place in this courtroom had no such testimony that –

MR. REGAN:

  Excuse me.  Judge, I do object.  He has to argue from the Record.  He said his partner pulled his gun.  I object to counsel arguing unless it's from the Record.

THE COURT:

  I overrule the objection.

MR. REGAN:

  Note my objection.

THE COURT:

  The jury is to rely upon – the jury heard the testimony, they heard the evidence, and they're going to be able to rely upon their memories as to what was produced at trial.

  LSA-C.Cr.P. art. 774 provides that the scope of closing argument must be limited to the evidence admitted, the lack of evidence, conclusions of fact therefrom and the law applicable to the case.  This article further states that the argument shall not appeal to prejudice, and the State's rebuttal argument shall be confined to answering the argument of the defendant.  However, even if closing arguments go beyond the scope of LSA-C.Cr.P. art. 774, the errors are harmless unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.  State v. Clemons, 01-1032 (La.App. 5 Cir. 2/26/02), 811 So.2d 1047, 1050, writ denied, 02-866 (La. 11/22/02), 834 So.2d 972, cert. denied, 538 U.S. 1063, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003).

  The law regarding mandatory mistrials is set forth in LSA-C.Cr.P. art. 770, and the law regarding discretionary mistrials and admonitions is set forth in LSA-C.Cr.P. art. 771.

  LSA-C.Cr.P. art. 771 provides as follows:

- 21 -

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

A mistrial is a drastic remedy and, except in instances in which it is mandatory, a mistrial is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 126, writ denied, 00-0908 (La. 4/20/01), 790 So.2d 13. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Id.

With regard to the first exchange at issue, the prosecutor's comment that the defense failed to call a witness from the doctor's office did not warrant a mistrial. The record indicates that defense counsel suggested during the cross-examination of Ms. Pierre that defendant was parked in front of the doctor's office because he had been inside of that office. During rebuttal, the prosecutor's comment about the defense's failure to call a witness from the doctor's office was simply a response to that suggestion. Further, defense counsel requested an admonition following those comments, pursuant to LSA-C.Cr.P. art. 771, which was given by the trial judge when he informed the jury that the defendant had no duty to call witnesses. Also, the trial judge instructed the jury that the statements and

arguments of counsel were not evidence.  After reading the argument as a whole and considering the entirety of the record, we do not find that the prosecutor's statements regarding the defense's failure to call a witness were sufficient to influence the jury's verdict.  Accordingly, the trial court did not err in failing to grant a mistrial.

With respect to the second exchange at issue, regarding the prosecutor's comments about the gun during rebuttal argument, the record indicates that defense counsel argued during closing argument that defendant jumped over the side of the expressway when the police pulled the gun on him and his co-defendants.  Thus, the prosecutor's rebuttal argument was properly confined to answering the argument of the defendant.  LSA-C.Cr.P. art. 774.  However, it appears that the prosecutor was incorrect when he stated during rebuttal argument that there was no testimony that a gun was being pointed at defendant.  During the cross-examination of Deputy Giron, the deputy testified that, although he did not have his weapon out when he ordered defendant out of the vehicle, his partner did.  Deputy Giron further explained that, at the time defendant jumped over the rail, the weapon had been drawn.

Although defense counsel objected to the prosecutor's comment that there was no such testimony, he did not move for a mistrial or request an admonition.  However, the trial judge gave an admonition anyway, stating that the jurors were to rely upon their memories as to the evidence and testimony that was introduced at trial.  Further, as was noted above, the trial judge instructed the jury that statements and arguments of counsel were not evidence.  Thus, considering the strong circumstantial evidence and the trial judge's admonition and instruction to the jury, it is clear that the comments regarding the gun did not influence the jury or contribute to the verdict.  Accordingly, we find that the prosecutor's comments regarding the gun were harmless, and this assignment of error is without merit.[25]

To the extent that petitioner is asking this Court to consider whether the state courts misinterpreted the applicable provisions of the Louisiana Code of Criminal Procedure, the Court cannot oblige.  "'[I]t is not the province of a federal *habeas* court to reexamine state-court

---

[25] State v. Falkins, 880 So.2d at 914-17; State Rec., Vol. II of VI.

determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999)

(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

       Moreover, to the extent that petitioner is claiming that his federal constitutional rights

were violated by the prosecutor's comments, that claim has no merit.  The United States Fifth

Circuit Court of Appeals has held:

> Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.  Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote

omitted); see also Jones v. Butler, 864 F.2d 348 (5th Cir. 1989).  In other words, a prosecutor's

remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon

which the jury based its verdict."  Harris, 313 F.3d at 245.

       In the instant case, even if the prosecutor's comments were improper, petitioner is

not entitled to relief pursuant to the applicable standard.  The prosecutor's comments were neither

persistent nor pronounced.  Moreover, in light of the considerable evidence of petitioner's guilt, the

remarks clearly were not a "crucial, critical, highly significant factor" in the jury's verdict.  The

comments did not render petitioner's trial fundamentally unfair.

       For all of the foregoing reasons, this claim for relief is without merit.

<u>Illegal and Excessive Sentence</u>

Petitioner next argues that his sentences were illegal and excessive.  On direct appeal,

the Louisiana Fifth Circuit Court of Appeal rejected those claims, holding:

> In defendants' second assignment of error, they argue that their sentences on count one are illegal and excessive, because their convictions on count one were based upon insufficient evidence.  The State responds that the sentences on count one are within the statutory guidelines and are based on a valid statute, bill of information, and verdict.  Therefore, the State contends that the sentences are legal.
>
> In view of our finding that the evidence was sufficient to support defendants' convictions on count one, the defendants' argument that their sentences on count one are based on invalid convictions is without merit.  We note that the issue of whether the sentences on count one are excessive is addressed in defendants' third assignment of error.
>
> In their third assignment of error, defendants challenge their original sentences on all counts and their enhanced sentences on count one, arguing that they are excessive.  They contend that they did not deserve the maximum sentences, because none of the alleged victims was harmed.  The State responds that the record supports the sentences imposed and therefore, they should not be disturbed on appeal.
>
> Defendants orally moved for reconsideration of sentence after the original sentencing on all four counts; however, they did not state the specific grounds on which the motions were based, nor did they file written motions to reconsider sentence.  Defendants orally objected to their enhanced sentences on count one; however, they did not file written motions to reconsider sentence.
>
> The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. <u>State v. Hester</u>, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, <u>writ denied</u>, 99-3217 (La. 4/20/00), 760 So.2d 342.  Accordingly, defendants' sentences are examined only for constitutional excessiveness.
>
> The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment.  Even a sentence within the

prescribed statutory limit may violate a defendant's constitutional right against excessive punishment.  State v. Sweeney, 443 So.2d 522, 531 (La. 1983);  State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95, 97.  A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.  State v. Lobato, 603 So.2d 739, 751 (La. 1992);  State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir. 1991), writ denied, 577 So.2d 1009 (La. 1991).   In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.  State v. Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La. 9/5/97), 700 So.2d 506.

Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender.  State v. Quebedeaux, 424 So.2d 1009, 1014 (La. 1982), aff'd on remand, 446 So.2d 1210 (La. 1984).  However, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.  State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95, 97.  This Court should further consider three factors in reviewing a judge's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.  State v. Telsee, 425 So.2d 1251 (La. 1983); State v. Slang, 94-332 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, 1041, writ denied, 94-3063 (La. 4/7/95), 652 So.2d 1344.

Defendants were convicted of four counts of armed robbery. The sentencing range for the crime of armed robbery is set out in LSA-R.S. 14:64(B) which provides that:

> Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.

Prior to sentencing, the trial judge stated:

> The Court imposes the following sentence and let it be said that as I've said before here, armed robberies, in my opinion, are only a small step away

from a murder.  If someone uses a weapon, in this case they used firearms to commit a robbery, it's not going to be tolerated by this Court and my sentence is going to reflect the severity of what these two defendants did.  And I've looked closely at their criminal history, their conduct and the case as it was proven at trial.

The trial judge subsequently sentenced defendants to the maximum sentence of ninety-nine years on each count without benefit of parole, probation or suspension of sentence, to run concurrently.

The trial court later found defendants to be second felony offenders.  Under the multiple bill statute, the sentencing range for second felony offenders with underlying convictions for armed robbery is 49 1/2 years to 198 years.  LSA-R.S. 15:529.1(A)(2)(a); LSA-R.S. 14:64.  The trial judge vacated the sentences on count one and re-sentenced defendants under the multiple bill statute to imprisonment at hard labor for 110 years, to run concurrently with the ninety-nine-year original sentences on counts two, three, and four.

A review of the jurisprudence reveals that ninety-nine-year sentences imposed upon defendants convicted of armed robbery have been previously upheld in many cases, including cases in which the victims were not physically injured.  See State v. Dempsey, 02-1867 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037; State v. Douglas, 389 So.2d 1263 (La. 1980); State v. Williams, 482 So.2d 1090 (La.App. 3 Cir. 1986); State v. James, 545 So.2d 560 (La.App. 4 Cir. 1989), writ denied, 551 So.2d 618 (La. 1989); State v. Carter, 570 So.2d 234 (La.App. 5 Cir. 1990); and State v. Wilson, 452 So.2d 773 (La.App. 4 Cir. 1984).

In the instant case, the trial court imposed a 110-year enhanced sentence upon both defendants on count one, to run concurrently with the ninety-nine-year sentences on counts two, three, and four.  This Court and other courts have upheld similar sentences for defendants who were convicted of armed robbery and subsequently found to be second felony offenders.  See State v. McNeal, 99-1265 (La.App. 4 Cir. 6/14/00), 765 So.2d 1113, writ denied, 00-2134 (La. 9/28/01), 797 So.2d 684; State v. Freeman, 00-238 (La.App. 3 Cir. 10/11/00), 770 So.2d 482, writ denied, 00-3101 (La. 10/5/01), 798 So.2d 963; State v. Doleman, 02-957 (La.App. 4 Cir. 12/4/02), 835 So.2d 850, writ denied, 02-3101 (La. 9/19/03), 853 So.2d 633; and State v. Redditt, 03-354 (La.App. 5 Cir.

10/28/03), 868 So.2d 704, <u>writ denied</u>, 03-3484 (La. 4/8/04), 870 So.2d 268.

     In the instant case, defendant Falkins and Larry Simms walked into the bank with guns, cursing and yelling at everyone to get on the floor, and subsequently robbed four tellers of approximately $20,000,[FN5] thereby creating the risk of death and great bodily harm to approximately ten bank employees and customers who were in the bank at the time of the robbery. Defendant Simms waited in the car outside, ready to drive away, and drove off when defendant Falkins and Larry Simms got in the car. Additionally, defendant Falkins had two prior armed robbery convictions, and defendant Simms had two prior convictions, one for armed robbery and one for attempted carrying of an illegal weapon by a convicted felon, which shows a propensity for felonious behavior. In light of the circumstances surrounding the armed robberies, defendants' extensive and violent criminal records, and other sentences imposed by this Court and other courts on defendants similarly situated, we find that the trial court did not abuse its discretion in sentencing, because the sentences on counts one through four are not constitutionally excessive. Accordingly, this assignment of error is without merit.

        [FN5] Ms. Domingue testified that the amount of money taken in the robbery was a little less than $20,858, and that all of the money taken in the robbery was not recovered. As stated previously, Det. Carroll testified that $15,839 was found in the back of Dwayne Simms' vehicle.[26]

     To the extent petitioner is arguing that his sentences are excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. <u>Narvaiz v. Johnson</u>, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this

---

[26] <u>State v. Falkins</u>, 880 So.2d at 910-12; State Rec., Vol. II of VI.

Court will not review the state court's findings regarding the constitutionality of petitioner's sentences under state law.

Further, to the extent that petitioner is claiming that his sentences are excessive under the Eighth Amendment of the United States Constitution, his claim is without merit.  In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."  Gonzales, 121 F.3d at 942 (quotation marks omitted).  "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare."  Id.  (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence.  Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).   Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses."   Id.

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment."   Gonzales, 121 F.3d at 943.   In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses.   The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.   The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In this case, petitioner was sentenced on Counts Three and Four to concurrent terms of ninety-nine years imprisonment without benefit of probation, parole, or suspension of sentence. For the grave crime of armed robbery, it is clear that such a sentence not excessive.   See, e.g., Glover v. Hargett, 56 F.3d 682, 685 (5th Cir. 1995) (ninety-nine year sentence for armed robbery was not excessive); Wimberley v. Whitley, No. 94-30163, 1994 WL 684703, at *1 (5th Cir. 1994) (same).

Petitioner also argues that his enhanced sentence on Count One is excessive.  As to that count, he was found to be a second offender and was resentenced to a concurrent term of one hundred ten years imprisonment.  However, as noted, the United States Supreme Court held in Rummel that a life sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses. Here, both petitioner's current conviction and his predicate conviction were for considerably more serious offenses.[27]  In light of the finding in Rummel that a life sentence was not excessive under the facts of that case, this Court has no hesitation in concluding that petitioner's concurrent sentence of one hundred ten years imprisonment as a second offender under these more serious circumstances is not grossly disproportionate.  In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942.  Because petitioner's sentence is not so excessive as to violate the United States Constitution, this claim must fail.

### Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel both at trial and on appeal.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner

---

[27] Petitioner had previously been convicted of armed robbery and attempted possession of a firearm by a felon; however, he was charged as and found to be only a second offender.  State Rec., Vol. II of VI, transcript of April 1, 2003.  Because the first armed robbery conviction had served as the predicate for the firearm charge, it would have been impermissible to use of both of those prior convictions to enhance the current sentence.  State v. Moten, 619 So.2d 683, 685-86 (La. App. 4th Cir. 1993); State v. Hymes, 513 So.2d 371, 373 (La. App. 4th Cir. 1987).

seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See id. at 697.

> To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

> The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  In order to prove prejudice

with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briesno, 274 F.3d at 210.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

An ineffective assistance of counsel claim involves a mixed question of law and fact. Accordingly, this Court must defer to a state court decision rejecting such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

When petitioner asserted his ineffective assistance of counsel claims in the state post-conviction proceedings, they were denied on the merits.  The state district court held:

> Defendant maintains that trial counsel was ineffective for failing to 1) subpoena Larry Simms in support of his defense and 2) file a Motion to Sever when the introduction of evidence against petitioner's co-defendant prejudiced the defense.  He further alleges

that trial counsel failed to impeach the State's witnesses with the prior inconsistence [sic] statements.

The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial. Furthermore, the Court in Strickland, established that the performance inquiry into a counsel's effectiveness must be that his assistance was "reasonable considering all the circumstances." Id. at 689. The Court went on to emphasize the "countless" ways to provide effective assistance and also cautioned a cautioned a counsel's action being challenged that might be considered "sound trial strategy". Id.

In the instant case, none of the defendant's claims seem to go beyond strategic choices made by counsel at the time of the defendant's trial. A review of the record reveals that defense counsel filed numerous pre-trial motions. Defense counsel cross examined the State witness and argued on behalf of defendant at the Motion to Suppress Evidence Hearing. Defense counsel properly cross-examined the State's witnesses during the jury trial. Defense counsel also argued and objected to the State's comments regarding defendant's case during its closing arguments. Further, appellate counsel raised the issue of insufficiency of evidence as to count one (1) on direct appeal. These are considered trial tactics for purposes of evaluating the performance of defendant's counsel. Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the Strickland test, the defendant has failed to meet the two-prong test.

Thus, the defendant's claims of ineffective assistance of counsel are without merit.[28]

Further, finding that the underlying claims had no merit, the state district court also denied

petitioner's claims that his trial and appellate counsel were ineffective for failing to assert the claims

---

[28]  State Rec., Vol. VI of VI, Order dated February 16, 2006, p. 2.

in a Motion for Post Verdict Judgment of Acquittal and on appeal.[29]  The Louisiana Fifth Circuit Court of Appeal found "no error" with respect to those rulings,[30] and the Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.[31]

Petitioner first contends that counsel was ineffective in failing to call Larry Simms, who is petitioner's brother and one of the two robbers who entered the bank, as an alibi witness.  It is alleged that Larry Simms would have testified that petitioner had no knowledge of the plan to rob the bank.

Even if Larry Simms would have agreed to testify, counsel still should not be considered ineffective for failing to call him.  There is a strong presumption that counsel's decision regarding whether to call a witness is one of trial strategy.  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); see also Green v. Cockrell, No. 02-20650, 2003 WL 21145722 , at *2 (5th Cir. Apr. 29, 2003) ("A strategic or tactical decision not to call particular witnesses does not constitute ineffective assistance."); Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints based upon uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of

---

[29]  State Rec., Vol. VI of VI, Order dated February 16, 2006, p. 3.

[30]  Simms v. Cain, No. 06-KH-172 (La. App. 5th Cir. Mar. 17, 2006) (unpublished); State Rec., Vol. VI of VI.

[31]  State ex rel. Simms v. State, 948 So.2d 143 (La. 2007) (No. 2006-KH-1321); State Rec., Vol. VI of VI.

hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a

wide range of reasonable assistance and, under the circumstances, might be considered sound trial

strategy.  Strickland, 466 U.S. at 689.  Further, regarding matters of trial strategy, the United States

Fifth Circuit Court of Appeals has noted:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*. Moreover, a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it *permeates the entire trial with obvious unfairness.*

St. Aubin v. Quarterman, 470 F.3d 1096, 1102 (5th Cir. 2006) (internal quotation marks, brackets,

and citations omitted) (emphasis added), cert. denied, 127 S.Ct. 2133 (2007).

That presumption of effectiveness is particularly applicable in instances such as this

one.  As the United States First Circuit Court of Appeals has noted:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.  The witness may not testify as anticipated or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused.  Where the prosecution's case is less than compelling ..., the risk of "rocking the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony. Johnson v. Lockhart, 921 F.2d 796, 800 (8th Cir.1990) ("since the government has the burden of proving guilt beyond a reasonable doubt, it may not be necessary for the defense to introduce evidence to meet the constitutional requirement of effective representation"); cf. [United States v.] Natanel, 938 F.2d [302, 310 (1st Cir. 1991)] ("additional arguments could only impair [a] client's seemingly secure position....  In litigation, as in life, there is much to be said for such maxims as 'if it ain't broke, don't fix it,' and 'quit when you're ahead'").

<u>Lema v. United States</u>, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted).  The court continued:

> Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence.

<u>Id</u>.

In the instant case, there are several readily apparent strategic reasons for defense counsel to opt against calling Larry Simms to testify.  First, at the time of petitioner's trial on December 19, 2002, Larry Simms had already been convicted for his role in the robberies in a separate trial.[32]  Accordingly, in light of the fact that he had nothing left to lose by providing his own brother with an alibi in attempt to help him beat the charge, the jury would have viewed such alibi testimony with suspicion at best.  Second, as the state notes in its response, if Larry Simms had taken the stand, he could have been impeached by the fact of his own conviction stemming from his role in the bank robberies.  <u>See</u> <u>State v. Isaac</u>, 487 So.2d 565, 570 (La. App. 4th Cir. 1986); <u>see also</u> <u>United States v. Manges</u>, 110 F.3d 1162, 1176 (5th Cir. 1997). Clearly, defense counsel could have feared that the potential prejudice resulting from the jurors' knowledge of Larry Simms' conviction for the same crimes charged herein outweighed any benefit that could perhaps be gained through the testimony.  Under the facts of this case, counsel cannot be considered deficient in opting simply to try to discredit the state's case rather than taking the chance of alienating the jury by presenting the

---

[32]  Larry Simms was convicted on May 7, 2002.  <u>State v. Sims</u> [sic], 845 So.2d 1116, 1118 (La. App. 5th Cir. 2003).

questionable testimony of petitioner's brother and co-participant as the sole, inherently suspect alibi witness.

Petitioner next contends that his counsel was ineffective in failing to file a motion to sever.  Petitioner was charged in the same bill of information and tried jointly with co-defendant Floyd Falkins.  Petitioner, who only drove the getaway car, essentially argues that his counsel should have filed a motion for severance because petitioner was prejudiced by the evidence adduced at trial regarding the actions of Falkins and Larry Simms in the bank during the robberies.

Under Louisiana law, absent an election by the state to try them separately, co-defendants charged in the same indictment or bill of information are normally to be tried jointly.  La.C.Cr.P. art. 704.  The Louisiana Supreme Court has noted that valid policy considerations support the preference for joint trials:

> Joinder expedites the administration of justice, reduces the congestion of the trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve on juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.
> Another policy consideration implicit in the mandate of Article 704 that jointly indicted defendants shall be jointly tried is the need to present the whole case at one time where, as here, several defendants are involved in the same transaction.  The State's policy is supported by the general principle that the State decides when, how, and whom to prosecute and should therefore be permitted to join offenders under appropriate circumstances.

State v. Bradford, 367 So.2d 745, 747 (La. 1978).

Nevertheless, Louisiana law expressly requires severance when "[t]he court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."  La.C.Cr.P. art. 704(2).  That said, it is clear that "[a] defendant is not

entitled to a severance as a matter of right ...." State v. Quest, 772 So.2d 772, 783 (La. App. 5th Cir.

2000).  Rather, the defendant bears the burden of demonstrating that a severance is required, and

"[m]ere allegations will not suffice."  State v. Williams, 416 So.2d 914, 915 (La. 1982).  The

Louisiana Supreme Court has held:

> Whether justice requires a severance must be determined by
> the facts of each case.  A severance is necessary if the defenses of
> codefendants are mutually antagonistic to the extent a codefendant
> attempts to place the blame on the other, causing each defendant to
> defend against his codefendant as well as the State.  However, the
> mere unsupported allegation that defenses will be antagonistic is not
> sufficient to require a severance.

State v. Prudholm, 446 So.2d 729, 741 (La. 1984) (citations omitted).  In addition to cases in which

there are antagonistic defenses, severance should be granted "[w]here the ends of justice will best

be served by a severance ...." State v. Webb, 424 So.2d 233, 236 (La. 1982).  However, it is evident

that "[j]ustice does not require severance where only the extent of participation of each defendant

is at issue." State v. Gaskin, 412 So.2d 1007, 1012 (La. 1982).

In the instant case, Falkins' defense was not antagonistic to that of petitioner.  To the

contrary, Falkins' defense was that he was not involved in the crime at all,[33] and he did not in any

way implicate petitioner in the crime.  Further, even if petitioner had been tried separately, the same

evidence regarding the bank robbery would have been admissible at his separate trial.  There is

simply no basis for a finding that justice required severance.  Accordingly, even if counsel had filed

a motion for severance, it would have had no merit.  Counsel cannot be considered ineffective in

failing to file a meritless motion.  United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995)

---

[33] See State Rec., Vol. II of VI, transcript of December 19, 2002, pp. 155-70.

("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner next contends that his counsel was ineffective when he argued in his summation that petitioner was, at most, an accessory after the fact rather than a principal to the robberies as charged.[34] However, the United States Fifth Circuit Court of Appeals has held: "Where defense counsel has admitted his client's responsibility for something less than the crime charged, we have held such a decision to be a permissible trial tactic, depending on the circumstances." United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002). As noted previously in this opinion, courts are not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.

The soundness of counsel's strategy is readily apparent here. In this case, counsel had two options. First, he could dispute that petitioner was the driver of the car; however, in electing that option, he risked alienating the jury in light of the overwhelming evidence that petitioner was in fact the driver. Second, he could tacitly concede that petitioner was the driver. The latter option was clearly preferable, because it would not only bolster his credibility with the

_____

[34] Petitioner's objection to this strategy of portraying him as only an accessory after the fact is somewhat puzzling, in that, even now, that is his theory as to why he is not guilty of the crimes charged.

jury, but also was not an admission of guilt.  Petitioner was charged *only* as a principal to the crimes, and, therefore, he could *not* be convicted of the charges if he was merely an accessory after the fact.[35]  Therefore, the tacit admission gave counsel the ability to argue that *even if* petitioner was the driver, a fact not seriously in dispute, the prosecution *still* had not proven an essential element of the charges against him, i.e. that he knew in advance that his brothers planned to rob the bank.  Accordingly, the strategy allowed defense counsel to present the jury with a reasonable argument, and seemingly the *only* argument, as to why petitioner must be acquitted of the crimes charged.  Such a strategy does not constitute ineffective assistance of counsel.  See, e.g., United States v. Short, 181 F.3d 620, 624-25 (5th Cir. 1999); Lingar v. Bowersox, 176 F.3d 453, 459 (8th Cir. 1999); Underwood v. Clark, 939 F.2d 473, 474 (7th Cir. 1991); McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984).[36]

---

[35]  Petitioner was not charged with accessory after the fact, a violation of La.Rev.Stat.Ann. § 14:25, nor is accessory after the fact a responsive verdict to armed robbery.  La.C.Cr.P. art. 814(A)(22); State v. Hunter, 907 So.2d 200, 213 (La. App. 2nd Cir. 2005).

[36]  To the extent that petitioner is contending that he did not consent to this strategy, that contention is unavailing.  First, petitioner has presented no evidence whatsoever in support of his bald allegation that he was not consulted on the strategy.  Second, in any event, the United States Supreme Court has noted:

> An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy.  That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision.

Florida v. Nixon, 543 U.S. 175, 187 (2004) (citations and quotation marks omitted).  Even if petitioner was not consulted and did not expressly consent to this tactic, counsel nevertheless had the discretion to use the tactic.  See, e.g., Underwood, 939 F.2d at 474; McNeal, 722 F.2d at 676-77.

Petitioner next argues that counsel was ineffective in failing to object to the prosecutor's alleged mention and use of the fact that Larry Simms had already been convicted for his part in the robberies.  In a related claim, petitioner also faults defense counsel's failure to request a cautionary instruction regarding the jurors' consideration of that conviction.  However, in the comments at issue, made by the prosecutor during his opening statement and closing argument, he stated only that Larry Simms had been tried separately.  Those comments were necessary to explain to the jury why only two of the three participants in the crime were being tried in the instant proceeding.  Moreover, there was nothing improper about the comments, in that the prosecutor did *not* inform the jury that Larry Simms' trial had resulted in a *conviction*.[37]  Therefore, any objection would have been unfounded.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  Further, because the jury was not in fact informed that Larry Simms had been convicted, no cautionary instruction was warranted.  Accordingly, counsel was not ineffective for failing to request one.

Petitioner next contends that his counsel was ineffective in failing to impeach Jean Pierre with prior inconsistent statements regarding the license plate number of the getaway vehicle.

---

[37] See State Rec., Vol. I of VI, transcript of December 19, 2002, pp. 17-18; State Rec., Vol. II of VI, transcript of December 19, 2002, p. 151.

At the instant trial, she testified that the license plate number was "JCP 866."[38]  Petitioner contends that in previous statements she had given slightly different license plate numbers, i.e. "JDP-864" and "J - something - P 866."

A decision regarding whether to attempt to impeach a witness, and, if so, to what extent, is a matter which calls on counsel's professional judgment and requires him to balance a number of factors, including but not limited to the relative importance of the perceived inconsistencies, the likelihood of whether a witness can explain those inconsistencies, and the possible alienation of jurors over disputes concerning what they may consider ultimately inconsequential and time-consuming issues.  Accordingly, choices regarding impeachment are generally ones of trial strategy and, as previously noted, such strategic choices are not to be lightly second-guessed in a federal *habeas corpus* proceeding.

Here, such second-guessing is particularly inappropriate here for two reasons.  First, the discrepancies in the license plate numbers were fairly insignificant.  Second, and much more importantly, there was really no dispute as to whether the getaway car Pierre saw was in fact the car petitioner was later caught driving.  When the car was stopped, inside it was found ample evidence from the robberies, including guns, ammunition, gloves, a hooded sweatshirt, a ski mask, a red bandanna, a black nylon bag with red dye on the inside, $15,839 in cash, and three security dye packs.[39]  In light of that evidence, a protracted challenge of Pierre concerning the accuracy of her

---

[38]  State Rec., Vol. II of VI, transcript of December 19, 2002, p. 91.

[39]  State Rec., Vol. II of VI, transcript of December 19, 2002, pp. 128-29.

memory concerning the license plate number would have simply alienated the jury.  Counsel cannot be considered ineffective in choosing to avoid such a result.

Petitioner also complains that counsel was ineffective in failing to object to the jury instruction on the law of principals.  On that point, the trial judge instructed the jurors as follows: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."[40]  That instruction is taken verbatim from La.Rev.Stat.Ann § 14:24, and it is a proper instruction on the Louisiana law of principals with respect to the general intent crime of armed robbery.  See State v. Scroggins, 926 So.2d 64, 71-72 (La. App. 2nd Cir.), writ denied, 940 So.2d 655 (La. 2006).  Accordingly, any objection to the instruction would have been baseless.  As noted previously, counsel cannot be considered ineffective for failing to make meritless objections.

Petitioner next claims that his counsel was ineffective in failing to object to the introduction of evidence regarding petitioner's flight following the traffic stop and to the related jury instruction regarding flight.  However, it is clear that such evidence was relevant because, as a matter of state law, "[f]light and attempt to avoid apprehension indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer guilt." State v. Fuller, 418 So.2d 591, 593 (La. 1982); see also State v. Davies, 350 So.2d 586, 588 (La. 1977).  Further, the trial

---

[40]  State Rec., Vol. II of VI, transcript of December 19, 2002, p. 200.

- 44 -

judge's jury instruction on this point was consistent with the law and entirely proper.[41]  Therefore, any objection to the evidence or the jury instruction would have been meritless.  Again, counsel is not ineffective in failing to lodge frivolous objections.

Petitioner also contends that his appellate counsel was ineffective.  On appeal, petitioner counsel's argued that there was insufficient evidence to support the convictions and that the sentences were illegal and excessive.[42]   Petitioner contends that appellate counsel was ineffective in failing to also argue on appeal that (1) the trial court erred in failing to give a cautionary instruction regarding the evidence that Larry Simms was previously convicted for his role in the crimes and (2) petitioner was wrongly found to be a second offender.

As a preliminary matter, it should be noted that an appellate counsel's performance is not rendered deficient merely because he fails to raise every argument desired by his client.  "Counsel is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  As the United

---

[41]  The judge correctly advised the jury as follows:

If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, the flight, alone, is not sufficient to prove that the defendant is guilty.  However, flight may be considered along with all other evidence.  You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.

State Rec., Vol. II of VI, transcript of December 19, 2002, p. 200-01.  That standard jury instruction has been repeatedly upheld by Louisiana courts.  See, e.g., State v. Smith, 864 So.2d 811, 820-21 (La. App. 5th Cir. 2003); State v. Walker, 650 So.2d 363, 370 (La. App. 5th Cir. 1995); State v. Hosford, 572 So.2d 242, 246 (La. App. 2nd Cir. 1990).

[42]  State Rec., Vol. II of VI, appellants' brief.  Petitioner also filed a supplemental *pro se* brief.  State Rec., Vol. II of VI.

States Supreme Court has noted, "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983).   Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." Id. at 753.

In any event, petitioner has failed to demonstrate that the underlying claims have any merit whatsoever.

Appellate counsel clearly was not ineffective for failing to raise a claim regarding the absence of a cautionary instruction.  As previously noted in this opinion, a cautionary instruction was not warranted, because the jurors were not in fact informed that Larry Simms had been convicted for his role in the robberies.

Petitioner also has not met his burden of proof with respect to his claim that his appellate counsel was ineffective in failing to challenge the validity of the habitual offender adjudication.  Petitioner first claims that copies of his conviction records used in the hearing were inadmissable because they were not properly authenticated.  However, the transcript reflects that prosecution produced certified copies of those records.[43]  Under Louisiana law, such records are self-authenticating.  La. Code Evid. arts. 902 and 904; State v. Hunt, 573 So.2d 585, 588 (La. App. 2nd Cir. 1991); State v. Hayes, 561 So.2d 184, 186 (La. App. 5th Cir. 1990); State v. Obran, 496 So.2d

---

[43]  State Rec., Vol. II of VI, transcript of April 1, 2003, pp. 11-12.  Petitioner has produced no evidence indicating that the certifications were in any way defective.

1132, 1134-35 (La. App. 4th Cir. 1986). Petitioner next claims that the records relating to one of his prior convictions did not establish that he was properly advised of his rights and represented by counsel in that proceeding. However, petitioner has not shown that the predicate conviction was defective in either of those respects. Without such evidence, he cannot meet his burden of proof with respect to that claim. Third, petitioner argues that his habitual offender adjudication violated the prohibition against double enhancement. At the habitual offender proceeding, it was established that he had two prior convictions, i.e. one for armed robbery and one for attempted possession of a firearm by a convicted felon. Because the first armed robbery conviction served as the predicate for firearm charge, it would be impermissible to use *both* of those prior convictions to sentence him as a *third* offender. State v. Moten, 619 So.2d 683, 685-86 (La. App. 4th Cir. 1993); State v. Hymes, 513 So.2d 371, 373 (La. App. 4th Cir. 1987). However, the prosecutor acknowledged that fact,[44] and, as a result, petitioner was found to be only a *second* offender for enhancement purposes. Accordingly, there was no double enhancement violation in this case.

In light of the foregoing, petitioner has not demonstrated that his counsel performed deficiently when he failed to raise those claims on appeal. Additionally, petitioner has not met his burden to prove resulting prejudice by establishing that he would have prevailed on appeal if his counsel had asserted those claims. Briesno v. Cockrell, 274 F.3d 204, 210 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 285 (2000). Accordingly, his claim that his appellate counsel was ineffective fails.

---

[44] State Rec., Vol. II of VI, transcript of April 1, 2003, pp. 12-13.

Lastly, petitioner argues that, even if his ineffective assistance of counsel claims fail when considered individually, the specified "errors" warrant relief when considered collectively. This Court disagrees.  When, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively.  United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006), cert. denied, 127 S.Ct. 2029 (2007); Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000). As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error:  "Twenty times zero equals zero."  Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Because petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, the AEDPA's deferential standard requires that this Court likewise reject those claims.

<u>Procedurally Barred Claims</u>

The state argues that petitioner's remaining claims are procedurally barred. Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

- 48 -

In the last reasoned state court judgment addressing the remaining claims, the state district court clearly denied the claims on independent and adequate procedural grounds.[45] The state district court rejected the following claims as procedurally defaulted because they involve appealable issues which were not raised on direct appeal:  (1) petitioner was denied his right to a speedy trial; (2) petitioner was denied a fair trial due to the failure to sequester the witnesses; (3) petitioner was denied a fair trial due to the admission of evidence that his co-defendant had been convicted in separate proceedings; and (4) the trial court erred in failing to properly instruct the jury and in failing to give a cautionary instruction.[46]   Louisiana's rule that a claim regarding an appealable issue is waived if not asserted on direct appeal is considered an independent and adequate state court rule to support a procedural bar in federal court.  See, e.g., Dorsey v. Louisiana, Civ. Action No. 07-036, 2007 WL 1747014, at *4 (E.D. La. June 15, 2007); Hill v. Cooper, Civ. Action No.  04-2588, 2007 WL 458207, at *7 (E.D. La. Feb. 8, 2007); Stevenson v. Cain, Civ. Action No. 06-1244, 2006 WL 2850167, at *14 (E.D. La. Oct. 4, 2006).  The state district court then rejected petitioner's claim that he was wrongly found to be a habitual offender based on La.C.Cr.P. art. 930. 3, which sets forth the grounds on which post-conviction relief may be sought, and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), which held that claims involving sentencing errors may not be asserted in post-conviction proceedings.[47]   Federal courts have long held that article 930.3

---

[45]   Because the appellate courts failed to assign reasons for likewise denying the claims, they are presumed to have similarly relied on the procedural default.  Finley, 243 F.3d at 218 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

[46]   State Rec., Vol. VI of VI, Order dated February 16, 2006, p. 2.

[47]   State Rec., Vol. VI of VI, Order dated February 16, 2006, pp. 2-3.

and the Melinie decision likewise constitute independent and adequate grounds to support the application of a procedural bar. See, e.g., Hull v. Stalder, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept. 28, 2000); Madina v. Cain, Civ. Action No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sept. 20, 2006); Johnson v. Andrews, Civ. Action No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); Williams v. Miller, Civ. Action No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. July 24, 2006); Dedmond v. Cain, Civ. Action No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. June 30, 2005); Leonard v. Hubert, Civ. Action No. 00-0511, 2001 WL 333123, at *7 (E.D. La. Apr. 4, 2001).

When, as here, the state court has rejected a petitioner's claims based on independent and adequate state procedural rules, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner can demonstrate neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Petitioner has not shown cause for his default.[48] "Absent a showing of cause, it is

---

[48] With respect to some of the defaulted claims, petitioner contends that his counsel's ineffectiveness was the cause for the default. Some of those contentions of ineffective assistance

not necessary for the court to consider whether there is actual prejudice." <u>Martin v. Maxey</u>, 98 F.3d 844, 849 (5th Cir. 1996).

Therefore, petitioner's claims are procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice.  In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." <u>Finley v. Johnson</u>, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

<u>Lucas v. Johnson</u>, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, and in light of the considerable evidence of petitioner's guilt in this case, the Court finds that petitioner cannot make a persuasive showing that he is actually innocent of the charges against him.  Therefore, he cannot demonstrate that any miscarriage of justice will result

---

were exhausted in the state courts and others were not.  With respect to the contentions which were exhausted, those contentions are meritless for the reasons set forth in the section of this opinion discussing petitioner's ineffective assistance of claims. With respect to the contentions which were not exhausted, those contentions are procedurally defaulted.  A procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" for another procedurally barred claim unless plaintiff shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim.  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000).  Petitioner has made no such showing here.

from application of the procedural bar.  Accordingly, petitioner's remaining claims are procedurally barred in this federal proceeding.[49]

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Dwayne Simms be **GRANTED IN PART AND DENIED IN PART**.  **IT IS RECOMMENDED** that federal *habeas corpus* relief be **GRANTED** with respect to petitioner's conviction for the armed robbery of Kenyatta Bush.  **IT IS RECOMMENDED** that federal *habeas corpus* relief be **DENIED** with respect to petitioner's remaining convictions and that his claims challenging those convictions be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventh day of February, 2008.



_____

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[49]  That said, the Court has nevertheless already addressed the merits of several of those claims in connection with other claims discussed in this opinion.